IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:21-CV-138-FL

| | |
|---|---|
| CAPE FEAR RIVER WATCH;<br><br>NORTH CAROLINA WILDLIFE FEDERATION;<br><br>DEFENDERS OF WILDLIFE;<br><br>        Plaintiffs,<br>  v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS;<br><br>COLONEL BENJAMIN A. BENNETT, in his official capacity as U.S. ARMY CORPS OF ENGINEERS, WILMINGTON DISTRICT COMMANDER;<br><br>        Defendants. | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPLETE OR SUPPLEMENT THE ADMINISTRATIVE RECORD** |

Plaintiffs Cape Fear River Watch, North Carolina Wildlife Federation, and Defenders of Wildlife (collectively "Conservation Groups") respectively move the Court for an order compelling Defendants to complete, or in the alternative, supplement the administrative record in this matter.

## I. NATURE OF THE CASE

Defendants U.S. Army Corps of Engineers and Colonel Benjamin A. Bennett (collectively "the Corps") have failed to include all documents they considered directly or indirectly when compiling the administrative record, as required by law. Counsel for Conservation Groups submitted a Freedom of Information Act request to the Corps on March 1, 2021. More than a year later, on March 16, 2022, the Corps produced responsive records, including documents that should have been in the administrative record in the instant case. One document in particular shines light on how the Corps' decision to forego a comprehensive Environmental Impact Statement was arbitrary and capricious. Conservation Groups now move to include this document in the administrative record promptly after becoming aware of its existence and relevance to the claims before the Court.

## II. STATEMENT OF FACTS

On February 25, 2021, Defendants issued the Final Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") challenged in the instant case. AR000005; AR000186–87; [DE 1 ¶ 1]. By publishing the EA and FONSI, the Corps finalized its decision to eliminate its longstanding hopper dredging window and allow hopper dredging to occur in Wilmington and Morehead City Harbors any time of the year. AR000010. Shortly after the

Corps finalized this decision, counsel for Conservation Groups submitted a Freedom of Information Act ("FOIA") request to the Corps on March 1, 2021 seeking

> all documents, communications, or other records in the custody or control of the Wilmington District of the U.S. Army Corps of Engineers' ("Corps") related to seasonal restrictions on dredging activities (also known as "dredging moratoria" or "environmental dredging windows"), specifically including all communications related to the 2020 [South Atlantic Regional Biological Opinion].

Exhibit 1, Nelson Decl., Attach. A at 2. The Corps' FOIA Officer confirmed receipt of the request on March 1, 2021. *See id.*

On August 4, 2021, Conservation Groups filed this case challenging the Corps' reversal in policy and refusal to prepare a comprehensive Environmental Impact Statement ("EIS") despite substantial possibility that the action may have significant impacts on the environment. [DE 1]. On November 15, 2021, Defendants lodged the administrative record in this case. [DE 16; DE 16-1]. Counsel for Conservation Groups still had not received records responding to the March 2021 FOIA request. In accordance with the Court's case management order, counsel for Conservation Groups timely notified and exchanged letters with the Corps expressing concerns and identifying documents that should be in the administrative record. On January 7, 2022, the Corps lodged 213 missing documents with the Court. [DE 39; DE 39-2].

On March 16, 2022—more than a year after the FOIA request was submitted—counsel for Conservation Groups received a batch of records responsive to the March 2021 FOIA request. *See* Exhibit 1, Nelson Decl., Attach. A at 1. One of the responsive records produced is a document named "Year-Round Dredging Call with DEQ_5NOV2020.docx." Exhibit 1, Nelson Decl., Attach. B. This document consists of meeting notes from a November 5, 2020 meeting with state resource agency staff. *Id.* The document was attached to an e-mail sent between Corps' staff on November 5, 2020, with the subject line "RE: Year-Round Dredging EA

Comment Discussion with NCDEQ." *See* Exhibit 1, Nelson Decl., Attach. C.[1] The administrative record in the instant case contains an e-mail invitation and agenda for this same November 5, 2020 meeting. AR000590–92. The administrative record does not, however, contain the notes pertaining to this meeting which counsel for Conservation Groups received last week in response to the outstanding FOIA request. *See* [DE 16-2; DE 39-2].

The obtained document shows, among other relevant details, that when asked if the EA challenged in this case will set a precedent for other dredging projects a Corps official said, "yes for Regulatory" and that other "applicants will look to this EA," in the future. Exhibit 1, Nelson Decl., Attach. B at 4. The document also indicates that state officials "[d]o not want a permanent removal of windows," *id.* at 3, and that the state agency staff felt "that decision to remove windows is a big deal b/c [the State] can't go back and reverse," *id.* at 2.

### III. ARGUMENT

The Administrative Procedure Act ("APA") directs that this Court's evaluation of agency decisions be based on "the whole record." 5 U.S.C. § 706; *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "'The whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). A complete administrative record includes "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d

---

[1] Conservation Groups note that multiple records obtained through the FOIA request should have been included as part of the administrative record. In an attempt to mitigate any burden on the Court and to not cause a delay in final resolution of this case, however, Conservation Groups focus this motion on these meeting notes that relate to e-mails that were already included in the administrative record and that Conservation Groups would have requested to be included in the record prior to summary judgment briefing had they been aware of the record's existence.

3

551, 555 (9th Cir. 1989) (citations omitted) (emphasis in original); *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (same); *see also Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (10th Cir. 1993) (finding that an administrative record must include documents "referred to, considered by, or used by [the agency] before it issued its final rule"). Ultimately, the Court "should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

"If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc'y*, 984 F.2d at 1548. Without a complete record, the Court is unable to determine whether the agency "failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency"—and thereby acted in an arbitrary and capricious fashion. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As such, this Court has the authority to compel completion or supplementation of the administrative record. *Portland Audubon Soc'y*, 984 F.2d at 1548.

A. **Admission of the Meeting Notes is Necessary to Complete the Administrative Record.**

Completion of the record is appropriate where there is "non-speculative, concrete evidence to support [a party's] belief that the specific documents allegedly missing from the administrative record were directly or indirectly considered by the actual decision makers involved in the challenged agency action." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015). The presumption of regularity afforded agency action is overcome where movants

4

present a "strong, substantial, or prima facie showing that the record is incomplete." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008) (internal quotations omitted).

The meeting and accompanying notes between the Corps and state resource agency officials were directly or indirectly considered by the Corps and relate to the issues before the Court in the instant case. *See* Exhibit 1, Nelson Decl., Attach. B. The meeting occurred during the time the agency was considering the challenged decision and prior to the issuance of the FONSI. *Id.* at 1; *see generally* AR001859; AR000005. The meeting was with state officials who commented on the Corps' proposal and offered opinions, concerns, and questions about the decision to eliminate the hopper dredging window, which are memorialized in the notes. *See* Exhibit 1, Nelson Decl., Attach. B. Throughout the Final EA, the Corps repeatedly referenced and relied upon such discussions with the state agencies. *See, e.g.*, AR000008; AR000031; AR000066; AR000141; AR000145. In fact, the administrative record already contains similar types of notes covering other meetings between the Corps and the same state environmental resource agencies. *See* AR012549–54; AR002993–94. And the Corps' inclusion of the meeting invitation and agenda in the administrative record attests to the relevance of these notes to the agency's decision. *See* AR000590–92.

Conservation Groups have presented clear, concrete evidence that the specific document was "directly or indirectly before the agency at the time that it rendered its decision in the instant case." *See N.C Wildlife Fed'n v. N.C. Dep't of Transp.*, No. 2:19-CV-14-FL, 2020 WL 5044465, at *2 (E.D.N.C. Aug. 26, 2020). Accordingly, the record should be completed with the meeting notes.

B. **In the Alternative, Admission of the Meeting Notes is Proper to Supplement the Administrative Record.**

Even if the document were not necessary to complete the administrative record, it should be admitted to supplement the record. In NEPA cases, courts commonly allow record supplementation with relevant documents. "While review of agency action is typically limited to the administrative record that was available to the agency at the time of its decision, a NEPA suit is inherently a challenge to the adequacy of the administrative record . . . [and] . . . [t]hat is why, in the NEPA context, 'courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary.'" *Ohio Valley Env't. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 201 (4th Cir. 2009) (internal cites omitted) (quoting *Webb v. Gorsuch*, 699 F.2d 157, 159 n.2 (4th Cir. 1983)); *see also Nat'l Audubon Soc'y. v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (recognizing consideration of extra-record evidence to be appropriate "in cases arising under the National Environmental Policy Act"); *Suffolk Cty. v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977) (collecting cases). This Court has recognized that in NEPA cases, "there may be circumstances to justify expanding the record . . . ." *Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*, No. 7:17-CV- 162-FL, 2018 WL 4760124, at *4 (E.D.N.C. Sept. 30, 2018). Extra-record evidence is appropriately admitted "to inform the court about environmental factors that the agency may not have considered." *Ohio Valley Env't. Coal.*, 556 F.3d at 201; *see also Pamlico-Tar River Found. v. U.S. Army Corps of Eng'rs*, 329 F. Supp. 2d 600, 609 (E.D.N.C. 2004).

Here, the meeting notes are relevant to the Court's consideration of whether the Corps violated the law when it determined that an EIS was not necessary. For example, the meeting notes show that the Corps was aware of the precedential impact the EA would have on the

6

Corps' regulatory decisions, including project permits. *See* Exhibit 1, Nelson Decl., Attach. B at 4 ("[A]pplicants will look to this EA."); [DE 48 at 25–27; DE 51 at 13–14].

Because the notes identify information that the agency failed to consider, such as the expected precedential effect of the Corps' elimination of the dredging window, the record should be supplemented. *See N.C. All. for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp. 2d 491, 515 (M.D.N.C. 2010) (allowing extra-record evidence where Plaintiffs alleged the agency failed to consider all relevant factors in evaluating greenhouse gases and the agency failed to consider the impact of a reasonably foreseeable transportation project); *see also Ohio Valley Env't. Coal.*, 556 F.3d at 201 (noting that extra-record evidence in NEPA cases is needed to inform the court of environmental factors the agency did not consider).

## IV. CONCLUSION

Conservation Groups respectfully request the Court grant their motion to complete the administrative record with the identified notes from the November 5, 2020 meeting between the Corps and state environmental resource agencies that counsel for Conservation Groups received through a FOIA request last week. In the alternative, Conservation Groups request that the Court require supplementation of administrative record to include the identified notes.

Respectfully submitted, this the 24th day of March, 2022.

/s/ Ramona H. McGee
Ramona H. McGee
rmcgee@selcnc.org
N.C. Bar No. 47935
Sierra B. Weaver
sweaver@selcnc.org
N.C. Bar No. 28340
Hannah M. Nelson
hnelson@selcnc.org
N.C. Bar No. 56565

SOUTHERN ENVIRONMENTAL
LAW CENTER
601 W. Rosemary Street
Suite 220
Chapel Hill, NC 27516
Telephone: (919) 967-1450
Facsimile: (919) 929-9421
Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on this the 24th March, 2022, I have electronically served the foregoing Memorandum of Law in Support of Plaintiffs' Motion to Complete or Supplement the Administrative Record with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to counsel for Defendants.

Sally J. Sullivan
Natural Resources Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
sally.sullivan@usdoj.gov

Angela N. Ellis
Natural Resources Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
angela.ellis@usdoj.gov

Joshua B. Royster
Chief, Civil Division
U.S. Department of Justice
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601
joshua.royster@usdoj.gov

/s/ Ramona H. McGee
Ramona H. McGee

*Attorney for Plaintiffs Cape Fear River Watch, North Carolina Wildlife Federation and Defenders of Wildlife*